UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LAURENCE A. LONG,

        Plaintiff,                                Case No. 12-cv-15586

v                                                       Honorable Thomas L. Ludington

COUNTY OF SAGINAW and WILLIAM
FEDERSPEIL,

        Defendants.

_____/

## ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS AND DECLINING SUPPLEMENTAL JURISDICTION

Plaintiff Laurence Long filed suit against Defendants Saginaw County and Sheriff William Federspeil because Saginaw County Jail officers recorded his meetings with clients in the Saginaw County Jail without his knowledge. In his complaint, Long alleges that the videotaping of his client meetings violated (1) the Federal Wiretapping Act, 18 U.S.C. § 2511, and (2) his constitutional right to privacy under the Fourteenth Amendment. In addition to the two federal claims, Long also raises several state-law claims, including negligence, invasion of privacy, and violation of the Michigan Eavesdropping Statute.

Defendants have moved to dismiss Long's complaint contending that Long does not state a claim upon which relief may be granted. Defendants' motion to dismiss (ECF No. 15) should be granted. First, the Federal Wiretapping Act addresses audio recording but does not prohibit videorecording a person's image without audio, and therefore Long has not asserted a claim upon which relief may be granted. Second, Long has not alleged a privacy interest of a constitutional dimension, which is necessary to assert a Fourteenth Amendment informational

privacy right violation. Finally, having dismissed Long's two federal claims, the Court should decline to exercise supplemental jurisdiction over Long's remaining state law claims.

**I**

The facts are taken in the light most favorable to Plaintiff Long. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). Laurence Long is an attorney licensed to practice in Michigan. Compl. ¶ 11. Plaintiff had been in private practice since November 25, 1986, and practiced in several areas of law. Pl.'s Resp. Ex. 1 at 9-10. As part of his practice, Long accepted appointments pursuant to the Saginaw County Circuit Court's Plan for Appointment of Counsel for Indigent Parties. Pl.'s Resp. Ex. 2. Three months before the events of this case, in December 2011, the Saginaw County Chief Judge placed Long on a list to accept appointments to criminal cases involving capital offenses. Pl.'s Resp. Ex. 1 at 38.

In February 2012, Diane Messing hired Long to represent her in her divorce case. Pl.'s Resp., Ex. 1 at 61. Long was subsequently appointed to Messing's criminal case after she was arrested on two counts of operating a vehicle while intoxicated. Pl.'s Resp. 2-3; *see People v. Messing*, Nos. 12-037163-FH, 12-037164-FH (Saginaw County Circuit Court). After her arrest, Messing was detained in the Saginaw County Jail.

On March 25, 2012, Long visited Messing and another client in the Saginaw County Jail. Upon his arrival, Long asked Corrections Officer Stanley Powell if Messing had been seen by medical personnel as Long had requested on the previous Friday, March 23, 2012. Pl.'s Resp. Ex. 4 at 3. Officer Powell responded that Messing had been seen by medical personnel. Pl.'s Resp. Ex. 5 at 29.

Sergeant Ebony Rasco, who was also present during Long's inquiries into Messing's condition, became "alarmed" because Long "asked if his client received medical attention and

the frequency with which he visited his client." Pl.'s Resp. 3. Concerned with Long's behavior, Sergeant Rasco had corrections officers place Long in a room known as the "small classroom," which is commonly used for video arraignments. Pl.'s Resp. Ex. 5 at 34.

Sergeant Rasco acknowledged that she placed Long in the small classroom because she would be able to observe Long's interaction with Messing through video surveillance. Pl.'s Resp. Ex. 5 at 34-35. Long's meetings with Messing were videotaped and recorded from a remote location by Defendants. Compl. ¶ 13. The recordings were silent; they did not record any audio.

Long was unaware officials were taping his meetings. Compl. ¶ 14. Neither Sergeant Rasco nor any other corrections officer informed Long that they were recording his meetings. Pl.'s Resp. Ex. 5 at 13. Saginaw County Jail does not have any signs indicating that the small classroom's surveillance camera is on or that it is recording. *Id*. at 23. Moreover, at least two other criminal defense attorneys acquainted with the Saginaw County Jail were surprised to discover that their client meetings had been recorded. *See* Pl.'s Resp. Ex. 16 & 17.

Sergeant Rasco watched the video feed as officers brought Messing to the small classroom. She states that Long and Messing greeted each other with a hug and then sat down "very close to one another in a familiar sort of way." Pl.'s Resp. Ex. 3. Sergeant Racso "thought the hug was inappropriate for an attorney and his client." *Id*. She observed Long and Messing walk out of view of the camera for several minutes, and then Long pressed the call button so that the officer could retrieve Messing. *Id*.

After observing Long's interaction with Messing, Sergeant Rasco went back to view prior video footage of Long's visits with Messing. Pl.'s Resp. Ex. 3. She discovered that on March 19, 2012, Messing had hugged Long and kissed him on the cheek during a meeting. Long

denied ever kissing Messing while she was in jail, but stated that "I think [she] pecked me here [on the cheek] a couple times, not on the mouth." Pl.'s Resp. Ex. 1 at 58.

Sergeant Rasco informed the jail administrator, Captain William H. Gutzwiller, that she had observed inappropriate contact between Long and Messing. Pl.'s Resp. Ex. 7 at 9. Captain Gutzwiller banned Long from visiting Messing inside the Saginaw County Jail and also stated that if Long wanted to see Messing, a court transport officer could bring her to the courthouse for a meeting. *Id*. at 27.

Captain Gutzwiller then spoke with Judge Kaczmarek regarding the allegations against Long. Pl.'s Resp. Ex. 7 at 30. During the conversation, Captain Gutzwiller denied that Long and Messing had engaged in any "sexual stuff": "I said I didn't say it was sexual, sir, I said it was inappropriate." *Id*.

After the conversation with Captain Gutzwiller, Judge Kaczmarek requested an investigation into Long's conduct on the video recording. Pl.'s Resp. Ex. 8. Judge Kaczmarek removed Long from the Saginaw County Circuit Court's Plan for Appointment of Counsel for Indigent Parties. Pl.'s Resp. Ex. 1 at 38. Long was also replaced as Messing's attorney of record in her criminal cases. *See People v. Messing,* Nos. 12-037163-FH, 12-037164-FH (Saginaw County Circuit Court). Although he had been replaced as Messing's criminal defense attorney, Long continued to represent Messing in her divorce proceedings.

On May 16, 2012, Messing's ex-husband, David Messing, requested a copy of the videotape of Long and Messing's meetings pursuant to a Freedom of Information Request. Pl.'s Resp. Ex. 11. In response, Undersheriff Karl sent two copies of the videotapes to David Messing. Undersheriff Karl later admitted that he should not have disclosed the tapes to David Messing:

> Q: Would you agree with me that divulging a copy of that . . . videotape would be an invasion of privacy?

A: I would agree with you he should not have received it, yes.

Pl.'s Resp. Ex. 6 at 23.

On November 1, 2012, the Attorney Grievance Commission decided that the investigation into Long's alleged improper conduct did not warrant further action by the Commission and closed the investigation. Pl.'s Resp. Ex. 15.

## II

Before considering the merits of the parties' motions, however, the Court must determine the applicable standard of review. Despite the fact that Defendants titled their motions "Motion to Dismiss or, in the alternative, Motion for Summary Judgment," the rules are not interchangeable, and the distinction between them is not trivial. To illustrate, "when considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court cannot consider records or other documents outside the four corners of a plaintiff's complaint." *Scott v. Ambani*, 577 F.3d 642, 650 (6th Cir. 2009) (McKeague, J., concurring in part and dissenting in part). When considering a summary judgment motion under Rule 56, however, a court can consider all admissible evidence, "including deposition, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

After reviewing the pleadings, the Court believes that construing Defendants' motion as a motion to dismiss pursuant to Rule 12(b)(6) is appropriate. Regardless of whether the Court considers the exhibits, Defendants are entitled to judgment on Long's federal claims.

This Court may dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S.

662, 678, (2009). In considering a Rule 12(b)(6) motion, the Court construes the pleadings in the non-movant's favor and accepts the allegations of facts therein as true. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The pleader need not have provided "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678, (quoting *Twombly*, 550 U.S. at 570).

"When a motion to dismiss a complaint is granted, courts typically permit the losing party leave to amend." *PR Diamonds, Inc., v. Chandler*, 364 F.3d 671, 698 (6th Cir. 2004). Generally, "if it is all possible that the party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief, the court should dismiss with leave to amend." *Brown v. Matauszak*, 415 F. App'x 608, 614 (6th Cir. 2011) (quoting 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1483 (3d ed. 2010)). Under Federal Rule of Civil Procedure 15(a)(2), a party may amend its pleading only with the opposing party's consent or the court's leave, but "[t]he court should freely give leave when justice so requires."

### III

In his complaint, Long asserts two violations of federal law. First, he argues that the silent videorecording violates the Federal Wiretapping Act, which regulates the domestic interception of certain communications. Second, he argues that the silent videorecording violated

his right to privacy under the Fourteenth Amendment's substantive due process guarantee. Neither of these claims survives Defendants' motion to dismiss.

### A

Long first contends that the videotaping of the meeting with his client violated his rights under the Federal Wiretapping Act. The meetings were recorded by a closed circuit camera in the Saginaw County Jail's small classroom. The recordings did not contain any audio.

Contrary to Long's assertion, the videorecording of his meeting did not violate the Federal Wiretapping Act because the videorecording was a silent recording. The Federal Wiretapping Act's text and Supreme Court precedent establish that a cause of action under the Federal Wiretapping Act cannot be premised on silent videorecording because only the interception of auditory communications is prohibited.

Although the Sixth Circuit has not yet spoken on the issue, every circuit court that has addressed the issue has concluded that the Federal Wiretapping Act does not regulate silent video surveillance. *See United States v. Larios*, 593 F.3d 82, 90 (1st Cir. 2010); *United States v. Falls*, 34 F.3d 674, 679-80 (8th Cir. 1994); *United States v. Koyomejian*, 970 F.2d 536, 538 (9th Cir.1992) (en banc); *United States v. Mesa–Rincon*, 911 F.2d 1433, 1436–37 (10th Cir.1990); *United States v. Cuevas–Sanchez*, 821 F.2d 248, 251 (5th Cir.1987); *United States v. Biasucci*, 786 F.2d 504, 508–09 (2d Cir.1986); *United States v. Torres*, 751 F.2d 875, 880–81 (7th Cir.1984). These circuits relied on the plain language of the Federal Wiretapping Act and the Supreme Court's case law in concluding silent videorecording does not violate the Federal Wiretapping Act.

By its terms, the Federal Wiretapping Act does not address silent video surveillance. The statute prohibits the "intentional intercept[ion]" of any wire, oral, or electronic communication.

18 U.S.C. § 2511(1). The statute defines "intercept" as "the *aural* or other acquisition of the contents of any wire, electronic, or oral communication . . . ." 18 U.S.C. § 2510(4)(emphasis added). The text illustrates that the Federal Wiretapping Statute is concerned with auditory, not visual, interceptions.

Furthermore, the Supreme Court has concluded that the plain meaning of the Act's[1] terms indicate that the statute "is concerned only with orders authorizing or approving the interception of a wire or oral communication . . . ." *United States v. New York Tel. Co*, 434 U.S. 159, 166 (1977)(quotations omitted). In *New York Tel. Co.*, the Court held that pen registers are not subject to the statute because "[t]hese devices do not hear sound . . . [T]hey do not accomplish the 'aural acquisition' of anything." *Id*. Instead, the pen registers "present the information in a form to be interpreted by sight rather than by hearing." *Id*.

Here, Saginaw County Jail officials did not accomplish "the 'aural acquisition' of anything" as required to state a claim under the Federal Wiretapping Act. The officials recorded Long's meetings without any audio, and therefore did not intercept communications covered by the Federal Wiretapping Act. Long has not stated a claim upon which relief may be granted, and the Court should dismiss Long's claim for violation of the Federal Wiretapping Act.

**B**

Next, Long asserts that Defendants violated his right to privacy guaranteed by the Fourteenth Amendment when they videotaped the meeting with his client in Saginaw County Jail and then distributed the recording to third parties.[2]

---

[1] In *New York Tel. Co.*, the Supreme Court interpreted 18 U.S.C. § 2510-2520(1968) ("Title III"), the predecessor of the current Federal Wiretapping Act. Title III of the Omnibus Crime Control and Safe Streets Act of 1968, Pub.L. No. 90-351, 82 Stat. 212, was amended and retitled by the Electronic Communications Privacy Act of 1986, Pub.L. No. 99-508, 100 Stat. 1851, of which the Federal Wiretapping Statute is a part.
[2] In his response brief, Long asserts that his privacy rights were also violated when a deputy sat in on the meeting with his client. But this assertion was not stated in Long's complaint. Because Long did not plead this claim in his

**i**

An individual has a privacy interest "in avoiding disclosure of personal matters." *Whalen v. Roe*, 429 U.S. 589, 599-600 (1977); *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 465 (1977). The Sixth Circuit has described this privacy interest as "an individual's right to control the nature and extent of information released about that individual" and that it "has been coined an information right to privacy." *Bloch v. Ribar*, 256 F.3d 673, 683 (6th Cir. 1998).

The Sixth Circuit "has narrowly construed the holdings of *Whalen* and *Nixon* to extend the right to information privacy only to interests that implicate a fundamental liberty interest." *Bloch* at 684. A plaintiff alleging a violation of his right to information privacy must therefore demonstrate that "the interest at stake relates to 'those personal rights that can be deemed fundamental or implicit in the concept of ordered liberty.'" *Id*. (quoting *J.P. v. DeSanti*, 653 F.2d 1080, 1090 (6th Cir. 1981)). Only after a fundamental right is identified should a court proceed to the next step of the analysis—the balancing of the government's interest in disseminating the information against the individual's interest in keeping the information private. *See Kallstrom*, 136 F.3d at 1061 ("This circuit . . . will only balance an individual's interest in nondisclosure . . . against the public's interest in and need for the invasion of privacy where the individual privacy interest is of constitutional dimension.").

Applying these standards, the Sixth Circuit has recognized a fundamental liberty interest of constitutional dimension in only two instances: (1) where the release of personal information could lead to bodily harm, *see Kallstrom*, 136 F.3d at 1061; and (2) where the information released was of a sexual, personal, and humiliating nature. *See Bloch*, 156 F.3d at 684; *see also Lambert v. Hartmann*, 517 F.3d 433, 440 (2008).

---

complaint, the Court may not consider the allegation on a Rule 12(b)(6) motion to dismiss. *Johnson v. Hayden*, 67 Fed. App'x 319, 323 n. 4 (6th Cir. 2003).

First, in *Kallstrom*, the Sixth Circuit stated that plaintiffs have a fundamental liberty interest in stopping the release of personal information that increased their "vulnerability to private acts of vengeance." *Kallstrom* at 1067. The plaintiffs in *Kallstrom* were undercover police officers who sued their municipal employer for releasing personal information from their personnel files to the attorney for members of a particularly violent gang. *Id*. at 1059. The personnel files included the officers' home addresses and phone numbers, the names and addresses of personal references, bank account information, their social security numbers, and copies of their driver's licenses. *Id*. Once the personnel files were in his possession, the defense attorney allowed his gang-member clients to view the files. *Id*.

The Sixth Circuit noted that "[i]ndividuals have 'a clearly established right under the substantive component of the Due Process Clause to personal security and to bodily integrity,' and this right is fundamental where 'the magnitude of the liberty deprivation that [the] abuse inflicts upon the victim . . . strips the very essence of personhood.'" *Id*. at 1062-63 (quoting *Doe v. Claiborne County*, 103 F.3d 495, 507 (6th Cir. 1996). The Sixth Circuit explained that "it goes without saying that an individual's 'interest in preserving her life is one of constitutional dimension.'" *Id.* at 1063 (quoting *Nishiyama v. Dickson County*, 814 F.2d 277, 280 (6th Cir. 1987) (en banc). The court concluded that the disclosure of the officers' personnel files rose to a constitutional dimension because of the threat to the personal security and bodily integrity of the officers and their family members. *Id*. at 1063.

After *Kallstrom*, the Sixth Circuit recognized a second fundamental liberty interest in *Bloch*: a rape victim has a fundamental liberty interest in "preventing government officials from gratuitously and unnecessarily releasing the intimate details of the rape where no penalogical purpose is being served." 156 F.3d at 686. In *Bloch*, the defendant-sheriff held a press

conference in which he released the confidential details of Bloch's rape by an unknown assailant in retaliation for the plaintiff's public criticism of the sheriff. *Id*. at 676. The sheriff released "highly personal and extremely humiliating details" of the rape that were so embarrassing that Bloch had not even told her husband about them. *Id*. The Sixth Circuit concluded that the sheriff's publication of the details of Bloch's rape implicated her right to be free from governmental intrusion into matters touching on sexuality and family life, and that to permit such an intrusion would be to strip away the very essence of her personhood. *Id* at 685 (citing *Thorne v. City of El Segundo*, 726 459, 468 (9th Cir. 1983) for the proposition that an individual's privacy right in her sexual activities "follow[ed] from the cases holding that such matters as contraception, abortion, marriage, and family life are protected by the constitution from unwarranted government intrusion.").

Here, Long has not established that the interest at stake—the interest in meeting with his incarcerated client in complete privacy—relates to one of the Sixth Circuit's recognized fundamental liberty interests. Long has not alleged that the videorecording could lead to bodily harm, as in *Kallstrom*, nor has he alleged that the videocording was of a sexual, personal, and humiliating nature, as in *Bloch*. Long does allege that the videorecording caused him to suffer "extreme fear, distress and mental anguish . . . fear of an uncertain future, isolation, humiliation and embarrassment." Compl. ¶ 55. *Bloch*'s standard, however, requires the information to be "sexual, personal, *and* humiliating in nature." *Bloch*. The videorecording of Long's meeting does not meet this standard: generally an attorney-client meeting, though personal, is not by its nature sexual[3] or humiliating for the attorney.

---

[3] The ABA Annotated Model Rules of Professional Conduct even suggest that engaging in a sexual relationship with a client may be considered misconduct in violation of Rule 8.4.

- 11 -

Long's asserted privacy interest does not fit within either of the two fundamental liberty interests recognized by the Sixth Circuit, and therefore no fundamental right is at stake where the "disclosure" involves the silent videorecording of an attorney meeting with his incarcerated client.

**ii**

Alternatively, Long argues that the Court should recognize a new fundamental interest in the sanctity of the attorney-client privilege. However, the Sixth Circuit has noted that plaintiffs face an uphill battle when attempting to create new fundamental interests. *See Does v. Munoz*, 507 F.3d 961, 965 (6th Cir. 2007) ("[I]dentifying a new fundamental right subject to the protections of substantive due process is often an uphill battle, as the list of fundamental rights is short.").

Contrary to Long's argument, violation of the attorney-client relationship does not rise to the level of a constitutional violation and therefore cannot serve as a "fundamental liberty interest" under the Sixth Circuit's framework. The attorney-client privilege does not arise from the Constitution; rather, the attorney-client privilege is a creation of the common law. *Sanborn v. Parker*, 629 F.3d 554, 575 (6th Cir. 2010). Furthermore, "a violation of the attorney-client privilege is not *itself* a violation of the United States Constitution or its laws and treaties." *Id*. (quotations omitted) (emphasis in original). Therefore, the alleged violation of Long's attorney-client privilege by Defendants would not rise to the level of a constitutional violation and does not warrant the creation of a new fundamental liberty interest.

Because no fundamental right is implicated by the videorecording of a lawyer meeting with his incarcerated client, even if made in the context of the attorney-client relationship,

Long's constitutional right to privacy was not violated. Long has not stated a claim for violation of substantive due process, and this claim should be dismissed.

### C

In his response brief, Long asserts that Defendants violated his constitutional right to privacy under the Fourth Amendment. In fact, Long spends about eight pages expounding on this Fourth Amendment argument.

But Long did not allege a violation of his Fourth Amendment privacy rights in his complaint. Indeed, the first time any Fourth Amendment arguments were made was in Long's response to Defendants' motion to dismiss.[4] Courts cannot consider matters outside of the pleadings, including additional claims, when ruling on a Rule 12(b)(6) motion to dismiss. *Johnson v. Hayden*, 67 Fed. App'x 319, 323 n. 4 (6th Cir. 2003). A district court is limited to matters formally contained in the pleadings, and Long did not allege a violation of his Fourth Amendment privacy rights in his complaint. Therefore, the court may not consider Long's Fourth Amendment privacy right argument contained in his response.

In addition to arguing that Defendants violated his Fourth Amendment rights, Long also incorporates the Fourth Amendment's reasonable expectation of privacy into his Fourteenth Amendment information privacy analysis. Using the Fourth Amendment's standard, Long argues that he has a reasonable expectation of privacy while meeting with his clients that outweighs the Saginaw County Jail's interest in prisoner safety and security.

Despite his attempts to do so, Long cannot shoehorn the Fourth Amendment's reasonable expectation of privacy standard into the Fourteenth Amendment's right to informational privacy

---

[4] Although Defendants' motion to dismiss does not cite to the Fourth Amendment, the brief supporting the motion incorporates the Fourth Amendment balancing test into Defendants' privacy-interest analysis. The Fourteenth Amendment's right to privacy and the Fourth Amendment's privacy interest are significantly different legal theories, apart from just their constitutional foundation.

framework. The Sixth Circuit, in contrast to other circuits, has maintained that the Fourth Amendment's reasonable expectation of privacy standard does not play a role in determining whether there was a violation of the Fourteenth Amendment's right to informational privacy. *Lambert v. Hartman*, 517 F.3d 433, 442 (6th Cir. 2008); *see* Helen L. Gilbert, Comment, *Minors' Constitutional Right to Informational Privacy*, 74 U. Chi. L.Rev. 1375, 1382 (2207) (contrasting the Sixth Circuit's approach to information privacy with other circuits that do not require the implication of a fundamental liberty interest and instead "decide if the party alleging an invasion of privacy has a legitimate expectation of privacy in the information in question."). The Court has already determined that Long has not asserted a fundamental liberty interest, and therefore analysis of his Fourteenth Amendment right to information privacy claim ends. The Court is not required by Long's complaint or, for that matter, Defendants' motion to consider whether Long had a reasonable expectation of privacy in his meetings with his clients under the Fourth Amendment and declines to do so.

**IV**

Having concluded that Long's federal claims are to be dismissed, the Court now turns to Long's claims under state law for gross negligence, invasion of privacy, and violation of the Michigan Eavesdropping Statute.

The Court has supplemental jurisdiction over these state law claims because they form part of the same controversy as Long's federal claims. *See* 28 U.S.C. § 1367(a). However, this Court may decline to exercise supplemental jurisdiction if:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for

declining jurisdiction.

28 U.S.C. § 1367(c). When a plaintiff's federal claims have been dismissed on the merits, the question of whether to retain jurisdiction over the state law claims rests within the Court's discretion. *Blakely v. United States*, 276 F.3d 853, 860 (6th Cir. 2002). However, the dismissal of the claim over which the federal court had original jurisdiction creates a presumption in favor of dismissing without prejudice any state-law claims that accompanied it to federal court. *Id*. at 863. In addition, "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). The Court finds that the issues presented are more appropriate for resolution by the state court system, and therefore the Court declines to exercise its supplemental jurisdiction.

V

Accordingly, it is **ORDERED** that Defendants Saginaw County and William Federspiel's Motion to Dismiss (ECF No. 15) is **GRANTED IN PART**.

It is further **ORDERED** that Plaintiff Long's claim for relief under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983 is **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that Plaintiff Long's claim for relief under the Federal Wiretapping Act pursuant to 18 U.S.C. § 2510 *et seq* is **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that the Court declines supplemental jurisdiction and Plaintiff Long's remaining claims based on state law are **DISMISSED WITHOUT PREJUDICE**.

                                                                       s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: November 8, 2013

- 16 -

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 8, 2013.

s/Tracy A. Jacobs
TRACY A. JACOBS